**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**ANDREW J. PRINCE,**

    **Plaintiff,**

    vs.

                                    Civil Action 2:10-cv-00008
                                    Judge Algenon L. Marbley
                                    Magistrate Judge E.A. Preston Deavers

**MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

**REPORT AND RECOMMENDATION**

Plaintiff, Andrew J. Prince, brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for child's Social Security Disability Insurance Benefits and Supplemental Security Income. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 13), the Commissioner's Statement of the Case (ECF No. 14), and Plaintiff's Reply (ECF No. 15). For the reasons that follow, the undersigned **RECOMMENDS** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

**I.    BACKGROUND**

Plaintiff Prince maintains that he became disabled on September 20, 1994, at age 9, due to attention deficit/hyperactivity disorder ("ADHD"), anxiety, and oppositional defiant disorder ("ODD"). (R. at 54, 58.) On March 18, 2004, Plaintiff filed his application for disability insurance benefits. (R. at 58.) The application was denied initially and again upon

reconsideration. Plaintiff sought a *de novo* hearing before an administrative law judge.

On January 8, 2008, Administrative Law Judge Rita S. Eppler ("ALJ") held a hearing at which Plaintiff, represented by counsel, appeared and testified. A vocational expert ("VE") and Plaintiff's mother, Cathy Prince, also appeared and testified. On February 28, 2008, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act. (R. at 20–30.) In reaching this conclusion, the ALJ found that Plaintiff retains the ability to perform a full range of work at all exertional levels, but that he can only relate on a superficial basis to supervisors, co-workers, and the general public. (R. at 26.) The ALJ also found that Plaintiff can only adapt to settings in which duties are routine and predictable, such that he is only asked to make simple decisions and to understand, remember, and carry out simple, repetitive tasks. (*Id.*) On November 6, 2009, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 5–7.)

Plaintiff then timely commenced the instant action.

## II. PLAINTIFF AND HIS MOTHER'S TESTIMONY

Plaintiff testified that he was born in 1984 and had a high school education, with some special education classes. (R. at 223–24.) He intends to apply for community college to study computer information systems and Japanese. (R. at 232.) He has a driver's license, and passed the written driver's test the first time. (R. at 225.) He drives, on average, once every three days to go to the store or appointments. (R. at 226–26.) He spends about twelve hours a day on the computer, either reading Japanese comics or playing strategy/role-playing games. (R. at 230–31.) He also does some chores and cares for his cat. (R. at 230–31.)

Plaintiff testified that about once a month, he experiences intense anxiety that lasts for

about an hour. (R. at 239.) When these episodes of anxiety occur, Plaintiff tries to do something to keep his mind off of it. (*Id*.) He also testified that he has improved in his ability to interact with individuals he does not know. (R. at 239–40.) He stated that he seems to be getting better at concentrating. (R. at 236.) Plaintiff indicated that he has no side effects from medication. (R. at 227–28.)

Plaintiff testified that in the summer of his eighth grade he worked full-time as a janitor and did not experience difficulty performing the job or working with the other kids also doing the job, but he had some trouble being on time. (R. at 229.) Plaintiff represented that he has a hard time keeping friends, but that he was getting better at socializing. (R. at 238–40.)

Plaintiff's mother, Kathy Prince, testified that Plaintiff's anxiety prevents him from leaving the house by himself for long periods of time, but that he had improved recently. (R. at 241–42.) She testified that he does not like to interact with others, and that she has to remind him to do chores. (R. at 244.) She said that Plaintiff is able to pay attention when he is on the computer and that he can take the computer apart and put it back together. (R. at 245.) Ms. Prince also testified that he has a hard time staying on task without supervision. (R. at 246, 248.)

### III. MEDICAL RECORDS

**A.     1994**

In January 1994, a social worker diagnosed Plaintiff with attention-deficit disorder ("ADD") and assigned him a Global Assessment of Functioning (GAF) score of 60. (R. at 148–54.) He noted that Plaintiff had trouble staying on task and was taking some learning disabled classes at school. (R. at 148–49.)

**B.     2003**

In October 2003, Plaintiff saw psychiatrist Dr. J. T. Spare.  (R. at 185.)  Dr. Spare diagnosed Plaintiff with ADHD and ODD, assigned him a GAF score of 40,[1] and prescribed him medication.  (R. at 186.)  Plaintiff saw Dr. Spare again in November and December 2003.  (R. at 194.)

In December 2003, Dr. Donald Brown reported that Plaintiff indicated that he had trouble completing tasks that bored him, but that he was able to build a rocking chair and table in shop class.  (R. at 162–63.)  Dr. Brown noted that until he graduates, which is expected in June, Plaintiff should keep his social security through his father.  (R. at 162.)  Dr. Brown also noted that Plaintiff's mother "feels at this point she has to get [Plaintiff] placed on social security disability."  (*Id.*)

**C.     2004**

Throughout 2004, Plaintiff saw Dr. Spare monthly.  (R. at 192–94.)  Each month, he prescribed medication.  Dr. Spare noted that Plaintiff experienced difficulty with motivation, and that he liked to spend most of his time playing games on the computer.  (*Id.*)  As the year progressed, Dr. Spare noted improvement.  (*Id.*)  Dr. Spare also noted that Plaintiff saw a therapist during this time.  (R. at 192.)

In March 2004, state agency psychologist Dr. Bob L. Stinson opined that Plaintiff did not

---

[1] A GAF score of 40-31 is indicative of some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school).  *See* American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 33-34.

have a severe mental impairment. (R. at 118.) He acknowledged that Plaintiff tends to keep to himself, but noted that he related adequately with the examiner. (R. at 130.) Dr. Stinson noted that Plaintiff "is able to read, play video games and complete household chores. He is able to cook simple meals for himself and complete his laundry. He is able to remember, understand, and communicate satisfactorily." (*Id*.) Dr. Stinson concluded that Plaintiff had only mild limitations in his activities of daily living, maintaining social functioning and maintaining concentration, persistence or pace. (R. at 128.)

In June 2004, Dr. Spare reported that he had seen Plaintiff in October 2003 and then in May 2004. (R. at 164.) He noted that Plaintiff ignored his schoolwork and instead focused on playing video games. (*Id*.) Dr. Spare indicated that Plaintiff had "decreased memory"; an "inability to reason abstractly"; "diminished intellectual functioning"; "diminished" attention and concentration; and "impaired" social interaction and adaptation. (R. at 164–65.) Dr. Spare also indicated that Plaintiff could remember, understand and follow instructions in a limited way and had no conflicts with others. (R. at 165.) He indicated that Plaintiff had no history of being able to shop and he did not drive or take public transportation. (R. at 166.) Dr. Spare diagnosed Plaintiff with ADD, combined type; atypical bipolar disorder; and mixed personality disorder with schizoid and avoidant features, and assigned him a GAF of 35. (R. at 165.)

In July 2004, Plaintiff saw consulting psychologist Dr. J. Joseph Konieczny. (R. at 167–71.) Upon examination and clinical testing, Dr. Konieczny diagnosed Plaintiff with anxiety disorder, not otherwise specified ("NOS"); and dependent personality features. (R. at 171.) He opined that Plaintiff had an adequate ability to concentrate and to attend to tasks; an adequate ability to understand and follow directions; mild impairment in his ability to withstand stress;

5

and mild impairment in his ability to relate to others. (*Id.*) Dr. Konieczny assigned Plaintiff a symptom-severity GAF score of 56 and a functional severity GAF score of 48,[2] reflective of Plaintiff's lack of friends. (*Id.*)

Plaintiff's academic tutor, Mr. Newman, reported that Plaintiff had few serious problems in various functional domains. (R. at 173–80.) He indicated that Plaintiff did not like to redo work that he had done incorrectly and that he needed help organizing his thoughts. (R. at 180.)

In December 2004, Dr. Spare prepared another report. (R. at 183–84.) In this report, he indicated that Plaintiff's capacity for understanding and memory were "maintained"; his sustained concentration and persistence were "disturbed"; his adaptation was "limited"; and his social interaction was "lacking." (R. at 184.) Dr. Spare added that Plaintiff's activities of daily living were "restricted"; he found it "difficult" to be around others; and his stress tolerance was "limited." (*Id.*)

**D.    2005**

In January 2005, state agency psychologist Dr. Marianne N. Collins opined that Plaintiff had moderate limitations in his activities of daily living and in maintaining concentration, persistence or pace; as well as marked limitations in maintaining social functioning. (R. at 144.) She also opined that Plaintiff was able to understand, remember, and carry out instructions; concentrate and attend to repetitive tasks; and make simple decisions. (R. at 132.) Dr. Collins suggested that Plaintiff would perform optimally in settings with little social interaction, but noted that he is able to relate to others on a superficial basis and adapt to a setting in which

---

[2]A GAF score of 50-41 is indicative of serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). *See* American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 33-34.

duties are routine and predictable. (R. at 133.)

Throughout 2005, Plaintiff saw Dr. Spare monthly. (R. at 190–92.) He noted that Plaintiff also saw a therapist during this time. (R. at 192.) Dr. Spare continued to prescribe medications. (*Id*.) In January 2005, Plaintiff's mother reported being pleased with his progress. (*Id*.) Dr. Spare noted that "the major issue for them seemed to be that [Plaintiff] hadn't gotten social security disability." (*Id*.) Dr. Spare consistently described Plaintiff as doing "fair," "okay," "adequately . . . [with] no indication of serious problems," and regularly noted improvement with Plaintiff's mood, motivation, and socialization. (R. at 190–92.)

**E.    2006**

Throughout 2006, Plaintiff saw Dr. Spare monthly. (R. at 189–90, 196–97.) Dr. Spare continued to prescribe medications. (*Id*.) In January 2006, Dr. Spare noted that Plaintiff was doing "fair" with some motivation issues. (R. at 190.) In early April 2006, Dr. Spare completed a form "Medical Source Statement Concerning the Nature and Severity of an Individual's Mental Impairment." (R. at 187–88.) On this form, Dr. Spare indicated that Plaintiff had marked limitations in ability to remember, understand and follow simple directions; marked limitations in his ability to maintain attention and concentration; and marked limitations in his ability to perform work at a reasonable pace. (R. at 187.) He also opined that Plaintiff had marked limitations in ability to keep a regular work schedule; moderate limitations in his ability to interact with others; marked limitations in his ability to withstand stress; and marked limitations in his ability to make simple, work-related decisions. (R. at 188.) Dr. Spare further opined that "it would seem unlikely that [Plaintiff] would be able to perform any kind of competitive activity in the nearly foreseeable future." (*Id*.) In May 2006, Dr. Spare reported that

Plaintiff appeared to be doing "fair." (R. at 189.) In June 2006, he reported that Plaintiff appeared "to be doing adequately . . . [with] no indication of severe problems." (*Id.*) In September 2006, Dr. Spare indicated that Plaintiff "was doing adequately." (R. at 197.) In October 2006, he reported that Plaintiff's "[s]ymptom control appeared to be adequate." (*Id.*) In December 2006, Dr. Spare reported Plaintiff "[w]as doing okay." (*Id.*)

**F.     2007**

Plaintiff saw Dr. Spare monthly from January through September 2007. (R. at 195–96.) Dr. Spare continued to prescribe medications. (*Id.*) In January 2007, Plaintiff reported passing his high school proficiency tests and having an 85% average. (R. at 196.) In April 2007, Plaintiff reported that he was doing adequately. In May 2007, Dr. Spare described him as "doing adequately . . . [with] no indication of serious problems." (R. at 195.)

### IV.     VOCATIONAL EXPERT TESTIMONY

The VE testified that the limitations suggested by the state agency reviewer would permit claimant to do roughly 5,000 unskilled jobs at the heavy level; 9,000 unskilled jobs at the medium level; 10,000 unskilled jobs at the light level; and 2,250 unskilled jobs at the sedentary level. (R. at 251–54.) She opined that if Plaintiff's and his mother's testimony are found to be credible, Plaintiff could not work without an accommodation because of his difficulty leaving his home.

### V.     THE ADMINISTRATIVE DECISION

On February 28, 2008, the ALJ issued his decision. (R. at 30.) The ALJ concluded that Plaintiff had the following severe impairments: anxiety order, not otherwise specified ("NOS"), dependent personality disorder, and ADHD. (R. at 22.) Next, the ALJ concluded that Plaintiff

8

does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1. (R. at 24.) She specifically considered the criteria of listings 12.02, 12.06, and 12.08. (R. at 25.) The ALJ then found that Plaintiff had the residual functional capacity to perform "a *full range of work at all exertional levels* but can only relate on a superficial basis to supervisors, co-workers, and the general public. He can only adapt to a setting in which duties are routine and predictable, make simple decisions, and understand, remember, and carry out simple, repetitive tasks." (R. at 21.) Considering Plaintiff's age, education, work experience, and residual functional capacity ("RFC"), the ALJ further found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 29.) She therefore concluded that Plaintiff had not been disabled under the Social Security Act. (R. at 30.)

## VI. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'"  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VII.  ANALYSIS

In his Statement of Errors, Plaintiff advances two primary arguments in support of his assertion that the decision of the Commissioner denying benefits should be reversed.  First, Plaintiff asserts that the ALJ erroneously rejected one of Dr. Spare's opinions.  Second, Plaintiff contends that the ALJ erred in relying on the VE's testimony.  This Report and Recommendation addresses each argument separately.

**A.     Rejection of Dr. Spare's Opinion**

Plaintiff contends that the ALJ erroneously rejected Dr. Spare's April 2006 opinion.  He further maintains that the ALJ erred in failing to explicitly evaluate or in erroneously evaluating the factors set forth in *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Finally, Plaintiff contends that the ALJ erred in failing to specify the weight she accorded to Dr. Spare's April 2006 opinion.

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(d). The applicable regulations define medical opinions as "statements from physicians . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2).

The ALJ generally gives deference to the opinions of a treating source "since these are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ." 20 C.F.R. § 416.927(d)(2); *Blakley*, 581 F.3d at 408. If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(d)(2).

Even if the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must still meet certain procedural requirements. *Wilson*, 378 F.3d at 544. Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id.*

Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(d)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 2010 WL 1725066, at *7 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 312 F. A'ppx 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(e). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(e); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

In the instant case, the parties do not dispute that Dr. Spare, Plaintiff's psychiatrist, is a treating physician. The ALJ considered each of Dr. Spare's opinions, including the April 2006 opinion, but rejected his opinions to the extent they conflicted with the opinions of the state

12

agency psychologists and the consulting psychologist, which she explicitly accepted and adopted. The ALJ explained that:

> Controlling weight cannot be given this opinion as it conflicts with the evidence of record, including Dr. Spare's own submitted treatment notes. The claimant was able to complete his school work and consider college. He was able to perform all of the tasks at the psychological consultive examination and attend to the hearing without difficulty. And Dr. Spare's notes show that the claimant's symptoms are under good control with medication.

(R. at 27.) The ALJ also indicated that he had considered claimant's symptomatology and evaluated the credibility of Plaintiff's statements based on his consideration of the entire case record. (*Id.*)

The undersigned finds that the ALJ properly declined to accord Dr. Spare's April 2006 opinion controlling weight because she found that it conflicted with the record as a whole. *See Blakley*, 581 F.3d at 406 (quoting SSR 96-2p, 1996 WL 374188, at *2 (July 2, 1996)) ("'[I]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if . . . it is inconsistent the with other substantial evidence in the case record.'").

The undersigned also finds that the ALJ provided legally sufficient reasons for rejecting those portions of Dr. Spare's opinion that conflicted with the state agency and consulting psychologists, satisfying *Wilson's* good-reason requirement. Specifically, the ALJ explained that Dr. Spare's April 2006 was not supported by his own treatment notes. *See* 20 C.F.R. § 404.1527(d)(3) (identifying "supportability" as a relevant consideration). The ALJ also noted the inconsistency of Dr. Spare's assessed limitations with the record as a whole. *See* 20 C.F.R. § 404.1527(d)(3) (identifying "consistency" with the record as a whole as a relevant consideration).

Substantial evidence supports both of the ALJ's stated reasons. First, Dr. Spare's April

13

2006 opinion, in which Dr. Spare opined that Plaintiff had "marked" limitations in most aspects of work functions, conflicts with his 2006 and 2007 treatment notes, which reflect that Plaintiff's symptoms were under control with medication. For example, Dr. Spare's 2006 treatment notes reflect his observations that Plaintiff was "doing adequately . . . [with] no indication of severe problems," his "[s]ymptom control appeared to be adequate," and he "[w]as doing okay." (R. at 189.) Dr. Spare's 2007 treatment notes similarly describe Plaintiff as "doing adequately . . . [with] no indication of serious problems" (R. at 195) and note Plaintiff's passing of his proficiency tests and achieving an 85% average (R. at 196).

     Second, substantial evidence supports the ALJ's assertion that Dr. Spare's April 2006 opinion is inconsistent with the record as a whole. In addition to the inconsistencies with his treatment notes, the ALJ notes that Dr. Spare's April 2006 opinion is inconsistent with the opinions of the state agency psychologists and the consulting psychologist. Dr. Stinson found that Plaintiff's ability to read, play video games, and complete household chores such as cooking and laundry, combined with his ability to remember, understand, and communicate satisfactorily, was inconsistent with a finding of a severe disability. Similarly, Dr. Konieczny, upon examining and testing Plaintiff, concluded that he had an adequate ability to concentrate and attend to tasks, an adequate ability to understand and follow directions, and only mild impairments in his ability to withstand stress and relate to others. The ALJ referenced other evidence undermining Dr. Spare's April 2006 opinion, including Plaintiff's uncontroverted ability to maintain focus when doing something he wanted to, such as building furniture; spending twelve hours daily on the computer to play strategy games and reading Japanese comics; or taking the computer apart and putting it back together. Finally, the ALJ referenced Plaintiff's ability to engage in a wide range

of activities and to go places where there are groups of people, such as his grandfather's funeral, his sister's wedding, and his own graduation party. (R. at 28.)

Further, the undersigned finds Plaintiff's assertions that the Court should reverse because the ALJ "erroneously failed to consider expressly the regulatory factor[s] of specialization [and] . . . treating relationship" unavailing. (Pl.'s Reply 3, 4, ECF No. 15.) As set forth above, Plaintiff is correct, that the ALJ must consider these and other factors in determining what weight to accord Dr. Spare's opinion. *See Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2). There is no requirement, however, that the ALJ "expressly" consider each of the factors within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, No. 09-6081, 2010 WL 3521928, at *6 (6th Cir. Aug. 31, 2010) (indicating that, under *Blakely* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(d)(2) for weighing medical opinion evidence within the written decision). Regardless, in the instant case, contrary to Plaintiff's assertions, the ALJ *did* expressly consider Dr. Spare's specialization and treating relationship with Plaintiff. She specifically noted that Dr. Spare was Plaintiff's treating psychiatrist and referenced the fact that Plaintiff began seeing him in late 2003, with continued treatment in subsequent years. (R. at 23–24.)

Finally, the ALJ's reasoning was "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion." SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996). After identifying Plaintiff's RFC, the ALJ stated that "[t]his residual functional capacity accepts and adopts the opinions of the State agency psychologists as well as the opinion of Dr. Konieczny, the consulting psychologist . . . ." (R. at 26.) The ALJ found those opinions to be "well supported by the evidence of the record." (*Id.*)

15

In contrast, the ALJ found Dr. Spare's opinion to "conflict[] with the evidence of record," declining to afford it controlling weight for that reason. (R. at 27.) Thus, it is clear that the ALJ rejected Dr. Spare's opinion to the extent it conflicts with the evidence of the record and with the opinions of the state agency psychologists and the consulting psychologists. By way of example, Dr. Spare's opinion that Plaintiff had moderate limitations in his social interactions is consistent with the state agency psychologists' and the consulting psychologists' opinions on this matter. The ALJ therefore accepted this portion of Dr. Spare's April 2006 opinion, incorporating this limitation into Plaintiff's RFC. (R. at 25.)

**B.      Reliance on the Vocational Expert's Testimony**

Next, Plaintiff asserts that the ALJ erred in relying on the VE's testimony because the ALJ failed to fulfill her affirmative responsibility under Social Security Ruling 00-4p to ask the VE whether her testimony was consistent with the Dictionary of Occupational Titles ("DOT"). The Commissioner concedes that the ALJ failed to carry out her affirmative responsibility under Social Security Ruling 00-4p to ask the VE about potential conflicts between her testimony and the DOT, but maintains that such an error is harmless because no actual conflict has been or can be identified. The undersigned finds that the ALJ improperly neglected to inquire about potential conflicts, but agrees with the Commissioner, that this deficiency does not constitute reversible error where, as here, the plaintiff fails to demonstrate any conflict between the VE's testimony and the DOT.

"[T]he Social Security Administration imposes an affirmative duty on ALJs to ask if the evidence they have provided 'conflicts with the information provided in the DOT.'" *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009) (quoting SSR 00-4p, 2000 WL 1898704,

at *4 (Dec. 4, 2000)). Where no actual conflict is identified, however, courts have consistently held that an ALJ's failure to comply with SSR 00-4p's inquiry requirement is harmless error. *See, e.g., Williams-Overstreet v. Astrue*, 364 F. A'ppx 271, 275 (7th Cir. 2010) (finding that the ALJ's violation of his "affirmative responsibility to ask a vocational expert about any possible conflict . . . was a harmless error" where no conflict was demonstrated); *Poppa v. Astrue*, 569 F.3d 1167, 1173 (10th Cir. 2009) (acknowledging that the ALJ erred "by not inquiring about whether there were any conflicts between the VE's testimony . . . and the job descriptions in the DOT," but concluding "that this error was harmless because there were no conflicts"); *Renfrow v. Astrue,* 496 F.3d 918, 919 (8th Cir. 2007) (holding that "[t]he ALJ's error in failing to ask the vocational expert about possible conflicts between his testimony and the Dictionary of Occupational Titles was harmless, since no such conflict appears to exist"); *Ragland v. Comm'r of Soc. Sec.*, No. 1:08-CV-2688, 2010 WL 1133065, at *2–3 (N.D. Ohio Mar. 19, 2010) (holding that "the ALJ's failure to explicitly ask the vocational expert whether his testimony was consistent with the DOT, as required by Social Security Ruling 00-4p, was (at most) harmless error," where Plaintiff could not demonstrate an inconsistency); *Brown v. Comm'r of Soc. Sec.*, 1:09-CV-00300, 2009 WL 3614953, *6–7 (N.D. Ohio Oct. 22, 2009) (concluding that the ALJ's "failure to make such inquiry of the VE is harmless" where "there [was] no evidence demonstrating that the VE's testimony was inconsistent with the DOT")

Plaintiff is correct that the ALJ failed to ask the VE if her testimony conflicted with the DOT. Because Plaintiff has failed to demonstrate that an actual conflict exists, however, the

ALJ's error is harmless.³ Accordingly, the undersigned finds that the ALJ did not commit reversible error in failing to inquire about potential conflicts between the VE's testimony and the DOT.

## VIII. CONCLUSION

From a review of the record as a whole, the undersigned concludes that there is substantial evidence supporting the ALJ's decision denying benefits. Accordingly, the undersigned **RECOMMENDS** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## IX. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate

---

³Notably, Plaintiff does not even argue that such a conflict exists. *Cf. Beinlich v. Comm'r of Soc. Sec.*, No. 08-4500, 2009 WL 2877930, *4 (6th Cir. Sep. 9, 2009) (stating that the "obligation to investigate the accuracy of the VE's testimony . . . falls to the plaintiff's counsel, who ha[s] the opportunity to cross-examine the VE and bring out any conflicts with the DOT).

judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).


January 11, 2011                                         /s/ *Elizabeth A. Preston Deavers*
                                                         Elizabeth A. Preston Deavers
                                                         United States Magistrate Judge